TED H. S. HONG   3569
Attorney at Law
P. O. Box 4217
Hilo, HI 96720
Telephone No. 808.933.1919
Facsimile No. 808.935.8281
ted@tedhonglaw.com

Attorney for Plaintiffs
FREDERICK A. NITTA, M.D., INC.;
FREDERICK A. NITTA; HAWAII
COUNTY MEDICAL SOCIETY;
CHARLENE ORCINO; ADRIAN "SCOTT"
NORTON; ROBERT EGAN

**Electronically Filed**
**THIRD CIRCUIT**
**3CCV-22-0000033**
**28-JUN-2022**
**03:25 PM**
**Dkt. 19 CAMD**

IN THE CIRCUIT COURT OF THE THIRD CIRCUIT

STATE OF HAWAII

| | |
|---|---|
| FREDERICK A. NITTA, M.D., INC., and FREDERICK A. NITTA, individually and on behalf of all others similarly situated; HAWAII COUNTY MEDICAL SOCIETY; CHARLENE ORCINO; ADRIAN "SCOTT" NORTON; ROBERT EGAN, <br><br> Plaintiffs, <br><br> vs. <br><br> HAWAII MEDICAL SERVICE ASSOCIATION; DOE PERSONS 1-10; DOE PARTNERSHIPS 1-10; DOE CORPORATIONS 1-10; ROE "NON-PROFIT" CORPORATIONS 1-10, AND ROE GOVERNMENTAL ENTITIES 1-10, <br><br> Defendants. | CIVIL NO. 3CCV-22-0000033 (Contract) <br><br> FIRST AMENDED VERIFIED COMPLAINT; VERIFICATION OF FREDERICK A. NITTA; VERIFICATION OF CHARLENE ORCINO; VERIFICATION OF ADRIAN "SCOTT" NORTON; VERIFICATION OF ROBERT EGAN; EXHIBITS "1," - "3;" DEMAND FOR TRIAL BY JURY; SUMMONS <br><br> No Trial Date Set. |

## FIRST AMENDED VERIFIED COMPLAINT

Comes Now, Plaintiff, FREDERICK A. NITTA, M.D., INC. (hereinafter referred to as

I do hereby certify that the foregoing is a full, true and correct copy of the official court record of the Courts of the State of Hawai`i.
Dated at: Hilo, Hawai`i 28-JUN-2022, /s/ Cheryl Salmo, Clerk of the Third Judicial Circuit, State of Hawai`i



EXHIBIT 1

"FNI"), and Plaintiff FREDERICK A. NITTA, as an individual ("FN") and on behalf of all others similarly situated, the HAWAII COUNTY MEDICAL SOCIETY ("HCMS"), CHARLENE ORCINO ("Orcino"), ADRIAN "SCOTT" NORTON ("Norton"), and ROBERT EGAN ("Egan"), by and through their undersigned counsel and complains and alleges as follows:

## I.  PARTIES

1.  Plaintiff, FREDERICK A. NITTA, M.D., INC. ("FNI"), is and at all relevant times mentioned in this First Amended Verified Complaint, a Domestic Professional Corporation in good standing, organized and existing under the laws of the State of Hawaii and owned and operated by Frederick A. Nitta, since 1993.

2.  Plaintiff FNI's principal place of operation and does business in the County of Hawaii, State of Hawaii.

3. Plaintiff FNI's business includes but is not limited to, the practice of medicine, including but not limited to the practice of Obstetrics and Gynecology.

4.  FREDERICK A. NITTA ("FN"), is a natural person and resident of the County of Hawaii, State of Hawaii.

5.  HAWAII COUNTY MEDICAL SOCIETY ("HCMS"), is domestic non-profit corporation made up of health care professionals, including Plaintiffs FNI and FN, that represents and promotes the interests of other health care professionals, including but not limited to, physicians, throughout the State of Hawaii and does business in the County of Hawaii, State of Hawaii.

6.  CHARLENE ORCINO ("Orcino") is a natural person and resident of the County of Hawaii, State of Hawaii.

7.  ADRIAN "SCOTT NORTON ("Norton"), is a natural person and resident of the County of Hawaii, State of Hawaii.

8.  ROBERT EGAN ("Egan"), is a natural person and resident of the County of Kauai, State of Hawaii.

9. Defendant, HAWAII MEDICAL SERVICE ASSOCIATION, ( "HMSA") is a non-profit, mutual benefit society, organized and exists under the laws of the State of Hawaii, including Chapter 432, Hawaii Revised Statutes (:HRS") and does business in the County of Hawaii, State of Hawaii.

10.  Defendants DOE PERSONS 1-10, DOE PARTNERSHIPS 1-10, DOE CORPORATIONS 1-10, ROE "NON-PROFIT" CORPORATIONS 1-10 AND ROE GOVERNMENTAL ENTITIES 1-10, are sued herein under fictitious names for the reason that, after thoroughly investigating the facts of the action, said Defendants' true names and identities are presently unknown to the Plaintiffs, except upon information and belief, that they are connected in some manner with the named Defendants and/or were the agents, servants, employees, employers, representatives, co-venturers, associates, vendors, suppliers, manufacturers, distributors, subcontractors or contractors and/or owners, lessees, assignees, licensees, of the named Defendants and/or were in some manner presently unknown to the Plaintiffs engaged in the activities alleged herein and/or were in some manner responsible for the injuries or damages to the Plaintiffs which was a proximate cause of injuries or damages to the Plaintiffs and that their "true names, identities, capacity, activities and/or responsibilities" are presently unknown to the Plaintiffs or their attorney.  To ascertain the full names and identities of DOE PERSONS 1-10, DOE PARTNERSHIPS 1-10, DOE CORPORATIONS 2-10, ROE "NON

3

PROFIT" CORPORATIONS 1-10 and ROE GOVERNMENTAL ENTITIES 1-10, Plaintiffs'

counsel has investigated the facts alleged herein through *inter alia*, interviews of the Plaintiffs

and the records and files submitted by the Plaintiffs.  When the true names and capacities are

ascertained, through appropriate discovery, the Plaintiffs will move to amend this Verified

Complaint to state the true names.

## II.  JURISDICTION and VENUE

11.  Plaintiffs incorporate as if realleged, paragraphs 1 through 10, herein and

incorporates the same by reference as though set forth fully herein.

12.  This First Amended Verified Complaint is brought pursuant to Sections 603-21.5(3),

634-35, and 663-1, HRS.

13.  Venue is proper in this Court under Section 603-36, HRS, as the alleged events arose

from actions between the Plaintiffs and Defendant HMSA and events and/or omissions giving

rise to this action arose primarily in the Third Judicial Circuit, State of Hawaii and the Fifth

Judicial Circuit, State of Hawaii.

## III.  FACTS

14.  Plaintiffs incorporate as if realleged, paragraphs 1 through 13, herein and

incorporates the same by reference as though set forth fully herein.

15.  Plaintiff FN graduated with honors in Obstetrics, Gynecology and Surgery from John

A. Burns, School of Medicine in 1989.

16.  Plaintiff FN has been licensed to practice medicine since 1993 and been in private

practice since 1993 to the present.

17.  Plaintiff FN has been Board Certified in specialties of Obstetrics & Gynecology from

November of 1995 to the present.

18.  Plaintiff FN has privileges at the Hilo Medical Center and the Hilo Community Surgical Center.

19.  Plaintiff FN was the Chairperson at the Hilo Medical Center's for the Department of Obstetrics & Gynecology and the Surgery Department.

20.  Plaintiff FN currently serves as the Vice Chair of the Hilo Medical Center's Obstetric & Gynecology Department.

21.  Plaintiff FN operates his own practice, FREDERICK A. NITTA, M.D., INC. ("FNI") at 670 Ponahawai, Suite 200, Hilo, Hawaii for the past twenty-eight (28) years.

22.  As part of his standard practice and procedure, all incoming patients are required to complete a Patient Information form.  See, Exhibit "1," attached hereto.

23.  Each incoming patient is also given, must agree to and sign Plaintiff FNI's "Payment Policy." See Exhibit "2," attached hereto.

24.  The terms and conditions of the Plaintiff FNI's "Patient Information (Ex. "1.")" and "Payment Policy (Ex. "2.") creates a contractual relationship between Plaintiff FNI and patients:

> Thank you for choosing us as your OBGYN/Primary Care for Men and Women. We are committed to providing you with quality and affordable health care. Because some of our patients have had questions regarding patient and insurance responsibility for services rendered, we have been advised to develop a payment policy.  Please read it, ask us any questions you may have and sign in the space provided.  A copy will be provided o you upon request.

> 1.  **Insurance -**  We participate in most insurance plans, including Medicare. If you are not insured by a plan we do business with, payment in full is expected at each visit.

> \* \* \*

5

2.    **Co-payments and Deductibles -** All co-payments and deductibles must be paid at the time of service.

* * *

3.    **Non-covered Services -** Please be aware that some and perhaps all of the services you receive may be a non-covered benefit, or considered not reasonable or necessary by Medicare or other insurers.  **You must pay for these services in full at the time of visit**.

4.    **Proof of Insurance -** All patients must complete our patient information form before seeing the doctor. . . . **If you fail to provide us with the correct insurance information in a timely manner, you may be responsible for the balance of a claim**.

5.    **Claims Submission -** We will submit your claims and assist you in any way we reasonably can to help get your claims paid. . . . Please be aware that the balance of your claim is your responsibility whether or not your insurance company pays your claim.  **Your insurance benefit is a contract between you and your insurance company, we are not party to that contract**.

6.    **Coverage Changes -** If your insurance changes, please notify us before your next visit so we can make the appropriate changes to help you receive your maximum benefits.  If your insurance company denies your claim, the balance will automatically be billed to you.

* * *

Ex. "2," attached hereto (emphases in original and added).

25.  Once the "Payment Policy" is signed by the patient, a physician-patient relationship existed between Plaintiff FNI and patients.

26.  At all times mentioned herein, HMSA, was aware of the contractual relationship between the Plaintiff FNI and its patients/clients.

27.  On or about January 1, 2016, Plaintiff FN, on behalf of Plaintiff FNI and himself, notified the individual Defendant HMSA was unlawfully interfering with his medical practice

6

and patient care, including ignoring his diagnoses, his recommendation for treatment, medication and appropriate procedures. <u>See</u>, Exhibit "3," attached hereto. In his letter, Plaintiff FN, on behalf of Plaintiff FNI, put Defendant HMSA on notice that:

* * *

> HMSA has also provided DHS with inaccurate data in regards to being a PCP. HMSA had not been paying me for thousands of office visits. They then gave DHS information that essentially denies my being a PCP. The only reason that I did not hit 60% of my visits being primary care codes was that HMSA never paid me for my office visits. I do no understand how DHS can go along with this fraud.

* * *

> I have been caring for the sickest and most underserved on the Big Island for decades. When almost every physician has refused these patients, I have been the one to care for them. I also have been trying my best to stop pregnant women from using drugs during their pregnancy. I do not enjoy doing this, but as they physician and as a human being, I have to continue to do so. I have been in contact with insurance companies, DEA, FBI, police, NED, DOH, prosecutors, pharmacists, overprescribing doctors, medical examiners, drug treatment centers, legislators, and anyone I could think of to try to stop the epidemic of drug addiction on the Big Island. I have continuously been trying to have other doctors in our community address this, but have been hearing the same response. "There are no treatment centers, so I do not want to know. Do what we do, kick out the drug addicts from your practice. We do not know how to talk to them like you do, so I rather not know. Don't take welfare patients, it's not worth the headache. Why do you even care about these addicts?"

Exhibit "3," attached hereto.

28. Defendant HMSA did not respond to Plaintiffs FN and FNI, and Defendant HMSA's interference with Plaintiffs' medical practice and treatment of patients continued unabated.

29. In January of 2021, Plaintiff FN experienced a medical emergency and was taken to Queen's Hospital in Honolulu, Hawaii.

30. Plaintiff FN was hospitalized and surgery was performed on the Plaintiff FN.

31.  Plaintiff FN's physician was Dr. Edward Nin-Da Shen.

32.  Dr. Edward Nin-Da Shen diagnosed and prescribed medical services, procedures, tests, hospitalization and medication to Plaintiff FN resulting from his medical emergency in January of 2021.

33.  Any and all treatment prescribed by Dr. Edward Nin-Da Shen, for the Plaintiff FN was based to a reasonable degree of medical necessity.

34.  Plaintiff FN is a plan member and/or participant of HMSA.

35.  As recently as December, 2021, Defendant HMSA refused to make any payments to Dr. Edward Nin-Da Shen and/or Queen's Hospital for any of the medical services, procedures, tests, hospitalization and medication provided to Plaintiff FN resulting from his medical emergency in January of 2021.

36.  At all times alleged herein, Defendants' actions were part of a continuing course of conduct and misconduct.

## IV.  CLASS ACTION

37.  Plaintiffs repeat and reallege the allegations in paragraphs 1 – 36 of the First Amended Verified Complaint, and incorporates the same by reference as though set forth fully herein.

38.  Plaintiffs, FNI and HCMS bring this action as a Class Action pursuant to Rule 23(a) and (b)(3) of the Hawaii Rules of Civil Procedure ("HRCP") on behalf of all persons, similarly situated who, during the period as set forth in this First Amended Verified Complaint, were and are, physicians or other health care providers that contracted with patients for whom Defendant HMSA provided medical insurance.

39.   The members of the putative Class are so numerous that joinder of all members is impracticable.  While the exact number of Class members is unknown to Plaintiffs at the present time Plaintiffs FNI and HCMS' claims are typical of the claims of the Class because Plaintiffs FNI and HCMS' and all Class members sustained damages which arose out of Defendants' wrongful conduct as  complained of herein.

40.  Plaintiffs FNI and HCMS are representative parties who will fully and adequately protect the interests of putative Class members.  Plaintiffs FNI and HCMS have retained counsel who is experienced and competent in both class action and litigation.  Plaintiffs FNI and HCMS have no interests which are contrary to or in conflict with those of the Class they seek to represent.

41.  A Class Action would be superior to all other available methods for the fair and efficient adjudication of this controversy.  Plaintiffs FNI and HCMS know of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action.

42.  The prosecution of separate actions by individual class members would create a risk of inconsistent and varying adjudications concerning the subject of this action, which adjudication could establish incompatible standards of conduct for Defendants under the laws alleged herein.  Further, questions of law and fact common to the members of the Class predominate over any questions which may affect only individual members in that Defendants have acted on grounds generally applicable to the entire Class.  Among the questions of law and fact common to the Class are:

(a)      Tortious Interference with a Contractual Right;

9

(b)    Unfair Method of Competition;

( c)    Racketeering Influenced Corrupt Organization (RICO).

## V.  CAUSES OF ACTION

### A.  COUNT I (Tortious Interference with a Contractual Right - Defendant HMSA)

43.  Plaintiffs repeat and reallege the allegations in paragraphs 1 – 42 of the First

Amended Verified Complaint, and incorporates the same by reference as though set forth fully

herein.

44.  The unilateral and unlawful actions by Defendant HMSA, tortiously interfered with

Plaintiff FNI and members of HCMS' contracts and physician-patient relationship with the

following third-parties, who for medical privacy issues will only be identified by initials and date

of interference and incorporated herein:

| | Patient/client initials: | Date of Interference: |
|---|---|---|
| (1) | T.M.S. | May 29, 2019 |
| (2) | L.Y.A.-M | August 14, 2019 |
| (3) | A.B. | October 1, 2019 |
| (4) | P.B.P.(1) | October 21, 2019 |
| (5) | P.B.P.(2) | November 6, 2019 |
| (6) | A.-5 | November 19, 2019 |
| (7) | T.T.M. | November 25, 2019 |
| (8) | C.T. | January 18, 2020 |
| (9) | C.B. | March 5, 2020 |
| (10) | L.S.A. | March 19, 2020 |
| (11) | S.T.A. | April 6, 2020 |
| (12) | C.W.T. | April 23, 2020 |

| (13) | A.L. | May 12, 2020 |
| (14) | L.S.L. | May 22, 2020 |
| (15) | A.M.P. | August 12, 2020 |
| (16) | M.C.M. | March 12, 2021 |
| (17) | W.K.S. | June 22, 2021 |
| (18) | K.T.A. | July 30, 2021 |
| (19) | C.R.O. | August 22, 2021 |
| (20) | C.J.H. | September 3, 2021 |
| (21) | B.R.D. | December 1, 2021 |
| (22) | Y.L.A. | February 8, 2016 |
| (23) | T.W. | May 13, 2020 |
| (24) | C.L.K. | July 31, 2020 |
| (25) | C.A. | February 22, 2021 |
| (26) | D.A.G. | April 2, 2021 |
| (27) | J.G. | May 6, 2021 |
| (28) | D.B.A. | November 8, 2021 |
| (29) | M.J.D.R. | November 23, 2021 |
| (30) | A.K.N. | December 22, 2021 |

Each patient/client identified above as #1-#30, are at all times relevant in this First

Amended Verified Complaint, residents of the County of Hawaii, Third Judicial Circuit, State of

Hawaii,

45.  Plaintiff FNI had contracts for medical services for each patient/client (#1-#30),

including but not limited to the executed "Patient Information (Ex. "1.")" and "Payment Policy

(Ex. "2.")."

46.  HMSA knew of each contract for medical services for each patient/client (#1-#30)

listed above.

47.  Plaintiff FNI submitted patient/clients (#1-#30) contracts and information to HMSA

pursuant to the request of the third-party patient/clients (#1-#30).

48.  Based on the Plaintiff FNI's training, experience, medical tests and examination,

Plaintiff FNI prescribed for each individual patient/client (#1-#30) and each individual

patient/client (#1-#30) agreed to a course of treatment, including further tests, if needed.

49.  For each course of treatment for the individual patient/clients (#1-#30), including

further tests, Plaintiff FNI sent the treatment information to HMSA for payment.

50.  For each individual patient/client (#1-#30) HMSA tortiously interfered with the

contractual relationship between the patient/clients as follows:

| | **Patient/client initials:** | **Date of Interference:** | **Breach of Contract:** |
|---|---|---|---|
| (1) | T.M.S. | May 29, 2019 | Denial of Breast MRI |
| (2) | L.Y.A.-M | August 14, 2019 | Denial of Chest CT |
| (3) | A.B. | October 1, 2019 | Denial of Drug Screen - Hypertension test |
| (4) | P.B.P.(1) | October 21, 2019 | Denial Abdomen MRI for renal cyst/tumor |
| (5) | P.B.P.(2) | November 6, 2019 | Denial Abdomen MRI for renal cyst/tumor |
| (6) | A.-5 | November 19, 2019 | Denial of Brain CT |
| (7) | T.T.M. | November 25, 2019 | Denial of Brain CT |
| (8) | C.T. | January 18, 2020 | Denial of lidocaine patch 5% |
| (9) | C.B. | March 5, 2020 | Denial of cardiac scan |
| (10) | L.S.A. | March 19, 2020 | Denial abdomen & pelvis CT tomography |

| (11) | S.T.A. | April 6, 2020 | Denial of Dermoplast First Aid Spray - Pharmacy |
|------|--------|---------------|-------------------------------------------------|
| (12) | C.W.T. | April 23, 2020 | Denial Brain CT |
| (13) | A.L. | May 12, 2020 | Denial NIFEDIPINE (high BP and angina) |
| (14) | L.S.L. | May 22, 2020 | Denial NIFEDIPINE (high BP and angina) |
| (15) | A.M.P. | August 12, 2020 | Denial Brain CT |
| (16) | M.C.M.. | March 12, 2021 | Denial of Lisinopril 20 mg |
| (17) | W.K.S | June 22, 2021 | Denial of Insulin Pump |
| (18) | K.T.A. | July 30, 2021 | Denial of Nifedipine |
| (19) | C.R.O. | August 22, 2021 | Denial of Brain CT |
| (20) | C.J.H. | September 3, 2021 | Denial of Brain CT |
| (21) | B.R.D. | December 1, 2021 | Denial of Nifedipine |
| (22) | Y.L.A. | February 8, 2016 | Denial Chest CT. |
| (23) | T.W. | May 13, 2020 | Diagnosis of Sepsis |
| (24) | C.L.K. | July 31, 2020 | Denial of Brain CT |
| (25) | C.A. | February 22, 2021 | Denial of Nifedipine |
| (26) | D.A.G. | April 2, 2021 | Denial, Neurosurgery |
| (27) | J.G. | May 6, 2021 | Denial of hydroxy progesterone caproate |
| (28) | D.B.A. | November 8, 2021 | Denial of Abdomen, Pelvis CT |
| (29) | M.J.D.R. | November 23, 2021 | Denial of Brain CT |
| (30) | A.K.N. | December 22, 2021 | Denial of office visit/fetal test |

51.  HMSA, rejected the Plaintiff FNI's diagnoses and recommendations for treatment for every individual patient/client (#1-#30), and intentionally induced the individual patient/client

(#1-#30) to violate the contract with the Plaintiff FNI.

52.  HMSA's intentional intervention was unjustified and contrary to the Plaintiff FNI's education, training, experience, analysis, examination of each individual patient/clients (#1-#30), and degree of medical necessity and certainty for individual patient/clients (#1-#30).

53.  HMSA forced each, individual patient/client (#1-#30) to breach their contracts with Plaintiff FNI by not giving each, individual patient/client (#1-#30) a choice concerning medical treatment, forcing them to reject the Plaintiff's diagnoses, recommendations,  medical services, procedures, tests, hospitalization and/or medication and accept HMSA's directives concerning their treatment, medical services, procedures, tests, hospitalization and/or medication, to the detriment of the individual patient/clients (#1-#30).

54.  Contrary to the Plaintiff FNI's examination and orders, HMSA forced each, individual patient/client (#1-#30) to go without treatment, or changed the proposed treatment, medical services, procedures, tests, hospitalization and/or medication, to something that did not address their health condition or worsened their health condition.

55.  As a result of HMSA's inducement to have each individual patient/client (#1-#30) violate their contract with the Plaintiff FNI, Plaintiff was not compensated for work it previously performed, had to repeat work that was not compensated, was paid less for the work performed and/or not compensated by Defendant HMSA for the individual patient/clients (#1-#30) for any change in treatment, medical services, procedures, tests, hospitalization and medication.

56.  Defendant HMSA's tortious inference with Plaintiff FNI's contractual rights was an ongoing and continuing course of conduct, intended to negatively impact Plaintiff FNI's physician-patient, contractual relationship and Plaintiff FNI's profession, reputation and

business.

57.   Accordingly, Defendant HMSA tortiously interfered with the Plaintiff FNI's

contractual rights between Plaintiff FNI and each individual patient/client (#1-#30) and suffered

general, special and punitive damages in amounts to be shown at trial.  *Meridian Mortg., Inc. v.*

*First Hawaiian Bank*, 109 Hawai`i 35, 44, 122 P.3d 1133, 1142 (Ct. App. 2005), as corrected

(Oct. 13, 2005).

B.  COUNT II (Breach of Implied Covenant of Good Faith and Fair Dealing -Plaintiff FNI and
Defendant HMSA).

58.   Plaintiff FNI repeats and realleges the allegations in paragraphs 1 – 57 of the First

Amended Verified Complaint, and incorporates the same by reference as though set forth fully

herein.

59.   At all times alleged herein, Defendant HMSA had a duty to act in good faith in

dealing with Plaintiff FNI.  *Best Place, Inc., v. Penn Am. Ins. Co.,* 82 Hawai'i 120, 133, 920 P.2d

334, 347 (1996), *as amended* (June 21, 1996).

60.   At all times alleged herein, Defendant HMSA violated that duty because of the

unreasonable denial of Plaintiff FNI's requests for payment.  *Adams v. Hawaii Med. Serv. Ass'n*,

145 Hawai'i 250, 257, 450 P.3d 780, 787 (2019).

61.   At all times alleged herein, Defendant HMSA, would pay other physicians in the

State of Hawaii for similar tests, procedures and treatments, but would reject and deny any

request for payments to Plaintiff FNI for the very same tests, procedures and treatments.

62.   At all times alleged herein, Defendant HMSA also violated that duty by unreasonably

delaying the payment of benefits arising from the Plaintiff FNI's tests, procedures and treatments

performed by Plaintiff FNI. *Best Place, Inc., v. Penn Am. Ins. Co.,* 82 Hawai'i 120, 133, 920 P.2d 334, 347 (1996), *as amended* (June 21, 1996).

63. Accordingly, Defendant HMSA breached its Implied Covenant of Good Faith and Fair Dealing and Plaintiff FNI, suffered general, special and punitive damages in amounts to be shown at trial. *Meridian Mortg., Inc. v. First Hawaiian Bank*, 109 Hawai`i 35, 44, 122 P.3d 1133, 1142 (Ct. App. 2005), as corrected (Oct. 13, 2005).

C.  COUNT III (Breach of Contract - CHARLENE ORCINO)

64. Plaintiff Orcino repeats and realleges the allegations in paragraphs 1 – 63 of the First Amended Verified Complaint, and incorporates the same by reference as though set forth fully herein.

65. Plaintiff Orcino became a patient of Plaintiff FNI on April 28, 1999 and signed a form similar to Plaintiff FNI's "Patient Information (Ex. "1.")" and "Payment Policy (Ex. "2.") which she believed created a contractual relationship between Plaintiff FNI and herself regarding her future medical care.

66. On January 25, 2021, Plaintiff FNI examined Plaintiff Orcino and based on her medical condition and Plaintiff FN's examination, education, training and experience, to a reasonable degree of medical certainty, Plaintiff Orcino needed to immediately take Nifedipine and prescribed it to Plaintiff Orcino.

67. After the examination and being given the prescription for Nifedipine, Plaintiff Orcino attempted to fill her prescription at two (2) separate pharmacies in East Hawaii and was told each time that HMSA refused to honor Plaintiff FNI's prescription for Nifedipine.

68. Desperate, because of her condition, and the continued refusals by HMSA to pay for

the Nifedipine, the Plaintiff was forced to pay for the prescriptions out of pocket.

69.   Because of the time that elapsed from when Plaintiff FNI gave Plaintiff Orcino the prescription to the time she could actually afford to pay for the prescription herself, her condition worsened to the point she was Medivaced to Honolulu, Hawaii, at Kapiolani Medical Center for Women and Children and gave birth to a premature infant at twenty-five (25) weeks, gestation.

70.   The infant was dangerously premature but survived.

71.   Currently, the infant child requires significant and regular medical attention based on his developmental challenges resulting from his premature birth.

72.   Plaintiff Orcino and Plaintiff FNI believe that Defendant HMSA's continued and constant refusal to allow Plaintiff Orcino to fill the prescription from Plaintiff FNI, Defendant HMSA's refusals and delays, wrongfully interfered with the physician - patient relationship and contractual relationship, and was a substantial and contributing factor to the nearly fatal, premature birth of Plaintiff's child and resulting medical care.

73.   Accordingly, Plaintiff Orcino suffered general, special and punitive damages in amounts to be shown at trial.  *Meridian Mortg., Inc. v. First Hawaiian Bank*, 109 Hawai`i 35, 44, 122 P.3d 1133, 1142 (Ct. App. 2005), as corrected (Oct. 13, 2005).

D.  COUNT IV (Breach of Contract - ADRIAN "SCOTT" NORTON)

74.   Plaintiff Norton repeats and realleges the allegations in paragraphs 1 – 74 of the First Amended Verified Complaint, and incorporates the same by reference as though set forth fully herein.

75.   Plaintiff Norton became a patient of Dr. R. Lee-Ching, in Hilo, Hawaii, since March of 2000 and  signed a form which he believed created a contractual relationship between himself

17

and Dr. R. Lee-Ching regarding his future medical care.

76. Based on Dr. R. Lee-Ching tests and examination of Plaintiff Norton and Dr. Lee-Ching's, education, training and experience, and to a reasonable degree of medical certainty, Dr. R. Lee-Ching, referred Plaintiff Norton take a diagnostic MRI.

77. Defendant HMSA denied Dr. R. Lee-Ching's recommendation.

78. Defendant HMSA interfered with Dr. R. Lee-Ching's physician - patient and contractual relationship with Plaintiff Norton by requiring him to undergo weeks of physical therapy instead.

79. Defendant HMSA further interfered with Dr. R. Lee-Ching's contractual relationship with Plaintiff Norton by refusing to allow Plaintiff Norton to be seen by a specialist.

80. When Plaintiff Norton's health was noticeably diminished, Defendant HMSA allowed Plaintiff Norton to take a diagnostice MRI.

81. The results of Plaintiff Norton's MRI was that he had prostate cancer, which had now spread to his back and spine.

82. Plaintiff Norton was flown the same day to Honolulu, Hawaii, for emergency surgery at Queen's Hospital.

83. Plaintiff Norton is currently wheelchair bound, with limited walking ability, when he formerly was a strong, healthy and active man.

84. Plaintiff Norton believes that Defendant HMSA's continued and constant refusal to allow him Norton to undergo a diagnostic MRI, including Defendant HMSA's refusals and delay, wrongfully interfered with the physician - patient and contractual relationship between Plaintiff Norton and Dr. R. Lee-Ching, and was a substantial and contributing factor to the

18

spreading of the cancer from his prostate to his back and spine and resulting in emergency surgery and disability.

85.   Accordingly, Plaintiff Norton suffered general, special and punitive damages in amounts to be shown at trial.  *Meridian Mortg., Inc. v. First Hawaiian Bank*, 109 Hawai`I 35, 44, 122 P.3d 1133, 1142 (Ct. App. 2005), as corrected (Oct. 13, 2005).

E.  COUNT V (Breach of Contract - ROBERT EGAN)

86.   Plaintiff Egan repeats and realleges the allegations in paragraphs 1 – 85 of the First Amended Verified Complaint, and incorporates the same by reference as though set forth fully herein.

87.   Plaintiff Egan became a patient of Dr. Tracey M. Richardson, since approximately 2002 and  signed a form that he believed created a physician - patient and contractual relationship between himself and Dr. Richardson regarding his future medical care.

88.   Based on Dr. Richardson's tests and examination of Plaintiff Egan and Dr. Richardson's education, training and experience, and to a reasonable degree of medical certainty, Dr. Richardson, referred Plaintiff Egan to take a diagnostic MRI.

89.   Defendant HMSA denied Dr. Richardson's request and recommendation for a period of approximately five (5) years, leaving Plaintiff Egan to suffer in horrible pain.

90.   Defendant HMSA interfered with Dr. Richardson's physician - patient and contractual relationship with Plaintiff Egan by refusing to allow Egan to take a diagnostic MRI.

91.   When Plaintiff Egan's health was noticeably diminished, Defendant HMSA allowed Plaintiff Egan to take an MRI.

92.   The results of Plaintiff Egan's MRI uncovered that he had Spinal Stenosis and

herniated disc at L-3 and L-4 and has to have surgery.

93. Plaintiff Egan believes that Defendant HMSA's continued and constant refusal to allow Plaintiff Egan to undergo a diagnostic MRI, including Defendant HMSA's refusals and delay, wrongfully interfered with the physician - patient and contractual relationship between Plaintiff Egan and Dr. Richardson, and was a substantial and contributing factor to his deteriorating health over five (5) which included but not limited to, falling over, not being able to sleep due to pain, loss of the ability to put on and off his own clothes and instability and falling over.

94. Accordingly, Plaintiff Egan suffered general, special and punitive damages in amounts to be shown at trial. *Meridian Mortg., Inc. v. First Hawaiian Bank*, 109 Hawai`I 35, 44, 122 P.3d 1133, 1142 (Ct. App. 2005), as corrected (Oct. 13, 2005).

F. COUNT VI (Breach of Implied Covenant of Good Faith and Fair Dealing -Plaintiffs Orcino, Norton, Egan and Defendant HMSA).

95. Plaintiffs Orcino, Norton and Egan, repeat and reallege the allegations in paragraphs 1 – 94 of the First Amended Verified Complaint, and incorporates the same by reference as though set forth fully herein.

96. At all times alleged herein, a contractual relationship existed between Plaintiffs Orcino, Norton, Egan and Defendant HMSA to provide medical insurance.

97. At all times alleged herein, Defendant HMSA had a duty to act in good faith in dealing with Plaintiffs Orcino, Norton and Egan. *Best Place, Inc., v. Penn Am. Ins. Co.,* 82 Hawai'i 120, 133, 920 P.2d 334, 347 (1996), *as amended* (June 21, 1996).

98. At all times alleged herein, Defendant HMSA violated that duty because of the

unreasonable denial of Plaintiff Orcino's claims based the pre-natal care and emergency, pre-mature, birth of her child.  *Adams v. Hawaii Med. Serv. Ass'n*, 145 Hawai'i 250, 257, 450 P.3d 780, 787 (2019).  Defendant HMSA violated that duty because of the unreasonable denial of Plaintiff Norton's claims based the undiagnosed spread of cancer.  Defendant HMSA violated that duty because of the unreasonable denial of Plaintiff Egan's claims based the undiagnosed spinal stenosis and herniated disc.

99.  At all times alleged herein, Defendant violated that duty by also unreasonably denying and delaying the payment of benefits arising from the Plaintiffs Orcino, Norton and Egan's injuries.  *Best Place, Inc., v. Penn Am. Ins. Co.,* 82 Hawai'i 120, 133, 920 P.2d 334, 347 (1996), *as amended* (June 21, 1996).

100.  Accordingly, Defendant HMSA breached its Implied Covenant of Good Faith and Fair Dealing and Plaintiffs Orcino, Norton and Egan, suffered general, special and punitive damages in amounts to be shown at trial.  *Meridian Mortg., Inc. v. First Hawaiian Bank*, 109 Hawai`i 35, 44, 122 P.3d 1133, 1142 (Ct. App. 2005), as corrected (Oct. 13, 2005).

G.  COUNT VII (Unfair Method of Competition - Defendant HMSA)

101.  Plaintiffs repeat and reallege the allegations in paragraphs 1 –100 of the First Amended Verified Complaint, and incorporates the same by reference as though set forth fully herein.

102.  At all times relevant herein, specifically with respect to Plaintiff FNI's individual patient/client (#1-#30) as set forth herein, HMSA engaged in unfair methods of competition that delayed, impeded and/or denied lawful claims for payment made by Plaintiff FNI's individual patient/clients (#1-#30) for medical services rendered by Plaintiffs FNI.

21

103.   At all times relevant herein, specifically with respect to Plaintiff FNI's individual patient/clients (#1-#30) as set forth herein, HMSA's improper, unfair and deceptive acts constituted unfair methods of competition.  Plaintiffs FNI was unaware of HMSA's deceptive practices, rendered medically necessary services to Plaintiff FNI's individual patient/clients (#1-#30), who were HMSA plan members, with the reasonable expectation of being paid for such services in a timely fashion.  As a result of HMSA's unfair method of competition, Plaintiff FNI were denied monies to which they were lawfully entitled to for medical services rendered to their patient/clients, as HMSA plan members.

104.   HMSA's conduct adversely impacted, and continues to adversely impact Plaintiff FNI, by among other things:

(a) imposing financial hardship on and threatening the continued viability of the Plaintiff FNI's medical practice;

(b) threatening the continuity of care provided to patients, in particular, Plaintiff FNI's individual patient/clients (#1-#30), as required by Plaintiff FNI's training, experience, tests, analysis and sound medical judgment;

( c) requiring Plaintiff FNI to expend considerable resources seeking reimbursement that could otherwise be available to provide enhanced healthcare service to its respective patient/clients;

(d) forcing patients, in particular, Plaintiff FNI's individual patient/clients (#1-#30), to find other medical health care professionals in competition with Plaintiff FNI who would not be subject to HMSA's restrictive and reduced payments; and

22

(e) forcing, unduly influencing and changing, by way of reduced payments, Plaintiff FNI practice of providing quality and necessary medical services to patients, in particular, Plaintiff FNI's individual patient/clients (#1-#30) and substituting less expensive and less effective treatment procedures.

105.  HMSA's misconduct was an unfair method of competition and violated Sec. 480-2, HRS, and Sec. 480-4(a), HRS.

H.  COUNT VIII (RICO - Defendants HMSA and HMSA-Individuals)

106.  Plaintiffs repeat and reallege the allegations in paragraphs 1 – 105 of the First Amended Verified Complaint, and incorporates the same by reference as though set forth fully herein.

107.  That all times relevant in this First Amended Verified Complaint, Defendant HMSA was an "Enterprise" as defined in Sec. 842-1, HRS.

108.  At all times relevant in this First Amended Verified Complaint, Defendants HMSA, qualifies as a "Person" under Sec. 842-1, HRS.

109.  Defendant HMSA, including its officers, Directors, agents, employees and representatives, engaged in "Racketeering Activity," as defined in Section 842-1, HRS, including but not limited to:

a.  That all times relevant in this First Amended Verified Complaint, Defendant HMSA, engaged in Theft, by Diversion of Services, in violation of Sec. 708-830(5), HRS.

b.  Defendant HMSA, had and exerted control over the Plaintiff FNI providing medical services, procedures, tests, hospitalization and medication

23

prescribed by Plaintiff FNI to individual patient/clients (#1-#30), previously identified herein.

c.  Defendant HMSA, was not entitled to control the provision or administration of medical services, procedures, tests, hospitalization and medication prescribed by Plaintiff FNI to individual patient/clients (#1-#30).

d.  Defendant HMSA, intentionally diverted those medical services, procedures, tests, hospitalization and medication prescribed by Plaintiff FNI for individual patient/clients (#1-#30), previously identified herein, by denying the payment for medical services, procedures, tests, hospitalization and medication prescribed by Plaintiff FNI by requiring Plaintiff FNI's individual patient/clients (#1-#30), previously identified herein, to change the prescribed medical services, procedures, tests, hospitalization and medication by Plaintiff FNI, to different medical services, procedures, tests, hospitalization and medication that were less expensive, in order to benefit Defendant HMSA, in violation of Sec. 708-830(5), HRS.

110.  Defendant HMSA, by and through its officers, Directors, agents, employees and representatives also engaged in "Racketeering Activity," as defined in Section 842-1, HRS, including but not limited to:

a.  That all times relevant in this First Amended Verified Complaint, Defendant HMSA, engaged in Theft, by "Failure to make required disposition of funds," in violation of Sec. 708-830(6)(a), HRS.

b.  That all times relevant in this First Amended Verified Complaint,

Defendant HMSA, were a "person," that intentionally obtained property from individual patient/clients by way of premiums, and/or, from Plaintiff FNI through reduced payment of charges for medical services, procedures, tests, hospitalization and medication, per procedure, which benefitted Defendant HMSA, and it used as its own "proceeds."

     c.  That all times relevant in this First Amended Verified Complaint, Defendant HMSA, dealt with Plaintiff FNI, and/or, any savings from the reduced payment of any charges for medical services, procedures, tests, hospitalization and medication, as Defendant's own proceeds.

     d.  That all times relevant in this First Amended Verified Complaint, the agreements between Defendant HMSA and Plaintiff FNI were for the payment of medical services, procedures, tests, hospitalization and medication prescribed by Plaintiff FNI, based on Plaintiff FNI, education, training and experience and to which as Plaintiff FNI was believed to have been to a reasonable degree of medical and scientific necessity and certainty, which would best benefit the heath of the Plaintiff FNI's individual patient/clients (#1-#30), as previously identified herein.

     e.  That all times relevant in this First Amended Verified Complaint, Defendant HMSA refused to make payment to Plaintiff FNI or unilaterally reduced the amounts owed to Plaintiffs FNI, for medical services, procedures, tests, hospitalization and medication prescribed by Plaintiff FNI and rendered to individual patient/clients (#1-#30), as previously identified herein, without any

permission or authority.

f.  That in the alternative, Defendant HMSA forced Plaintiff FNI's individual patient/clients (#1-#30) to accept different, less expensive medical services, procedures, tests, hospitalization and medication, to the detriment of their health and contrary to the medical opinions and expertise of Plaintiff FNI and medical necessity, in order to increase its profit.

g.  Defendant HMSA forced Plaintiff FNI provide and perform inadequate, less expensive medical services, procedures, tests, hospitalization and medication prescribed to individual patient/clients (#1-#30), as previously identified herein, in order to maintain or increase HMSA's profit margin, instead of maintaining the patients' health and lives.

h.  Defendant HMSA intentionally failed to make and/or withheld the required payments from Plaintiff FNI, despite the fact that Plaintiff FNI, had already rendered medical services, procedures, tests, hospitalization and medication.

i.  That all times alleged in the First Amended Verified Complaint, Defendant HMSA's failure to make the specified payment was "Theft" by "Failure to make required disposition of funds," as defined under Sec. 708-830(6)(a), HRS.

j.  That all times alleged in the First Amended Verified Complaint, Defendant HMSA, knew of Defendant HMSA's failure to make the specified payments and that such unlawful withholding was "Theft" by "Failure to make

26

required disposition of funds," as defined under Sec. 708-830(6)(a), HRS and did nothing about it.

111. Defendant HMSA, by and through its officers, Directors, agents, representatives and employees received income derived, directly or indirectly, from a racketeering activity, which it used or invested, directly or indirectly, any part of such income, or the proceeds of such income, towards the operation of Defendant HMSA, in violation of Section 842-2(1), HRS.

112. Defendant HMSA, by and through its officers, Directors, agents, representatives and employees attempted to receive income derived, directly or indirectly, from a racketeering activity, which it intended to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, towards the operation of Defendant HMSA, in violation of Section 842-2(1), HRS.

113. From May of 2019 through and including the present, Defendant HMSA, by and through its officers, Directors, agents, representatives and employees who were employed by or associated with any enterprise, to wit, Defendant HMSA, conducted or participated in the conduct of the affairs of the enterprise through racketeering activity in violation of Sec. 842-2(3), HRS.

114. From May of 2019 through and including the present, Defendant HMSA,  by and through its officers, Directors, agents, representatives and employees who were employed by or associated with any enterprise, to wit Defendant HMSA, attempted to conduct or participate in the conduct of the affairs of the enterprise through racketeering activity in violation of Sec. 842-2(3), HRS.

I.  COUNT IX.  Negligent Infliction of Emotional Distress (Defendant HMSA & Defendant HMSA-Individuals).

115.  Plaintiffs repeat and reallege the allegations in paragraphs 1 – 114 of the First Amended Verified Complaint, and incorporates the same by reference as though set forth fully herein.

116.  Plaintiffs, or any other reasonable person, were and are currently, unable to adequately cope with the mental and emotional stress caused by HMSA's  misconduct, as described herein.

117.  HMSA's misconduct alleged herein caused the Plaintiffs to suffer severe emotional pain, including the following physical injuries:  Inability to sleep, loss of appetite, depression, anxiety, agitation, unprovoked rage and/or rumination, isolated and distant from friends and colleagues, unfounded suspicions and accusations.

118.  Based on HMSA's, negligence, the Plaintiffs suffered  humiliation, inconvenience, mental anguish, loss of enjoyment of life and other nonpecuniary losses.

119.  As a direct, proximate and foreseeable result of HMSA,, actions as set forth above, the Plaintiffs sustained special and general damages in amounts to be proved at trial including but not limited to mental and emotional distress, anguish  and humiliation.

120.  That HMSA's, misconduct was wilful, wanton, reckless or done with conscious indifference to the consequences so as to entitle the Plaintiffs to an award of punitive damages in amounts to be proved at trial.

J.  COUNT X. (Intentional Infliction of Emotional Distress (Defendant HMSA & Defendant

HMSA-Individuals).

121.  Plaintiffs repeat and reallege the allegations in paragraphs 1 – 120 of the First Amended Verified Complaint, and incorporates the same by reference as though set forth fully herein.

122.  HMSA's, actions and inaction, as previously alleged herein were intentional and/or reckless.

123.  HMSA's action and inaction, as previously alleged herein were outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and regarded as atrocious, and utterly intolerable in a civilized community.

124.  HMSA's action and inaction, as previously alleged herein directly and/or proximately caused the Plaintiffs extreme emotional distress, including but not limited to depression, sleep disturbance, anxiety, agitation, suicidal thoughts, anger and/or rumination.

125.  That HMSA's actions were wilful, wanton, reckless or done with conscious indifference to the consequences so as to entitle the Plaintiff FN to an award of punitive damages against HMSA, in amounts to be proved at trial.

## IV.  PRAYER FOR RELIEF

126.  Wherefore, all Plaintiffs pray that this Court:

a. That all Plaintiffs be awarded against HMSA general and special damages in amounts to be shown at trial; and

b. Award all Plaintiffs compensatory damages, in an amount to be proved at trial;

c. Award all Plaintiffs punitive damages, in an amount to be proved at

trial;

     d.  Award all Plaintiffs treble damages pursuant to Sec. 480-13(a)(1), HRS;

     e.  Pursuant to Sec. 842-5, HRS, and Chapter 432, HRS, order the forfeiture of Defendant HMSA's corporate charters and cancellation of registrations and licenses;

     f.  Pursuant to Sec. 414D-252( c) and Sec. 432:1-403, HRS, dissolve the Defendant HMSA's non-profit and/or mutual benefit society status;

     g.  Award Plaintiffs' costs and attorney's fees; and

     h.  Award Plaintiffs any pre and post judgment interest; and

     i. Grant such other relief as it may deem just and proper.

DATED:      Hilo, Hawaii, June 27, 2022.

          Respectfully submitted,

          /s/ Ted H. S. Hong
          TED H. S. HONG
          Attorney at Law

          Attorney for Plaintiffs

          FREDERICK A. NITTA, M.D., INC.;
          FREDERICK A. NITTA; HAWAII
          COUNTY MEDICAL SOCIETY;
          CHARLENE ORCINO; ADRIAN "SCOTT"
          NORTON; ROBERT EGAN

TED H.S. HONG  #3569
Attorney at Law
P.O. Box 4217
Hilo, Hawaii 96720
Telephone:  (808) 933-1919
Facsimile:  (808) 935-8281
Email:  ted@tedhonglaw.com

Attorney for Plaintiffs
FREDERICK A. NITTA, M.D., INC.;
FREDERICK A. NITTA; HAWAII
COUNTY MEDICAL SOCIETY;
CHARLENE ORCINO; ADRIAN "SCOTT"
NORTON; ROBERT EGAN

## IN THE CIRCUIT COURT OF THE THIRD CIRCUIT

## STATE OF HAWAII

| | |
|---|---|
| FREDERICK A. NITTA, M.D., INC., and FREDERICK A. NITTA, individually and on behalf of all others similarly situated; HAWAII COUNTY MEDICAL SOCIETY; CHARLENE ORCINO; ADRIAN "SCOTT" NORTON; ROBERT EGAN, <br><br>                       Plaintiffs, <br><br>    vs. <br><br>HAWAII MEDICAL SERVICE ASSOCIATION; DOE PERSONS 1-10; DOE PARTNERSHIPS 1-10; DOE CORPORATIONS 1-10; ROE "NON-PROFIT" CORPORATIONS 1-10, AND ROE GOVERNMENTAL ENTITIES 1-10, <br><br>                       Defendants. | CIVIL NO. 3CCV-22-0000033 (Contract) <br><br><br><br><br><br><br><br>VERIFICATION OF FREDERICK A. NITTA <br><br><br><br><br><br><br><br>NO TRIAL DATE SET |

## VERIFICATION OF FREDERICK A. NITTA

## VERIFICATION OF FREDERICK A. NITTA

STATE OF HAWAII          )
                              ) SS.
COUNTY OF HAWAII      )

     I, FREDERICK A. NITTA, being first duly sworn on oath, deposes and states that:

1. I am the Plaintiff in the above-entitled action.

2. I have read paragraphs 1-5; 9; 11-63; and 95-126 of the foregoing First Amended Verified Complaint.

3. The facts stated in the First Amended Verified Complaint are true and correct based upon my personal knowledge, expect as to the matters herein stated to be alleged on information and belief, and as to those matters, I believe them to be true.

4. Attached to the First Amended Verified Complaint as Exhibit "1," is a true and accurate copy of the Patient Information Form that all patients are given and sign for, as initial patients of Plaintiff FNI.

5. Attached to the First Amended Verified Complaint as Exhibit "2," is a true and accurate copy of Plaintiff FNI's "Payment Policy" which each incoming patient is also given, must agree to and sign.

6. Attached to the First Amended Verified Complaint as Exhibit "3," is a true and accurate copy of a letter I sent to each, individual Director of HMSA on January 1, 2016. I did not receive a response from Defendant HMSA or the Defendant DIRECTORS.

7. Further Affiant sayeth naught.

Executed in Hilo, Hawaii on _____

FREDERICK A. NITTA and,
FREDERICK A. NITTA, M.D., INC.

2

Sworn to before me this _24_ day of

_June_____, 2022.

Notary Public, State of Hawaii

Name: __Christine L. Periatt__

My Commission Expires: _2/5/2026_



## NOTARY PUBLIC CERTIFICATION

| | |
|---|---|
| Doc. Date: _6/24/2022_ | #Pages: _3_ |
| Notary Name: __Christine L. Periatt__ | Judicial Circuit: _3rd._ |
| Doc. Description: _Verification of Frederick A. Nitta_ | |

Notary Signature _____  Date _6/24/2022_

(Official Stamp or Seal)

TED H.S. HONG  #3569
Attorney at Law
P.O. Box 4217
Hilo, Hawaii 96720
Telephone:  (808) 933-1919
Facsimile:  (808) 935-8281
Email:  ted@tedhonglaw.com

Attorney for Plaintiffs
FREDERICK A. NITTA, M.D., INC.;
FREDERICK A. NITTA; HAWAII
COUNTY MEDICAL SOCIETY;
CHARLENE ORCINO; ADRIAN "SCOTT"
NORTON; ROBERT EGAN

IN THE CIRCUIT COURT OF THE THIRD CIRCUIT

STATE OF HAWAII

| | |
|---|---|
| FREDERICK A. NITTA, M.D., INC., and FREDERICK A. NITTA, individually and on behalf of all others similarly situated; HAWAII COUNTY MEDICAL SOCIETY; CHARLENE ORCINO; ADRIAN "SCOTT" NORTON; ROBERT EGAN, <br><br>                    Plaintiffs, <br><br>    vs. <br><br>HAWAII MEDICAL SERVICE ASSOCIATION; DOE PERSONS 1-10; DOE PARTNERSHIPS 1-10; DOE CORPORATIONS 1-10; ROE "NON-PROFIT" CORPORATIONS 1-10, AND ROE GOVERNMENTAL ENTITIES 1-10, <br><br>                    Defendants. | CIVIL NO. 3CCV-22-0000033 (Contract) <br><br><br><br>VERIFICATION OF CHARLENE ORCINO <br><br><br><br><br><br><br><br>NO TRIAL DATE SET |

VERIFICATION OF CHARLENE ORCINO

## VERIFICATION OF CHARLENE ORCINO

STATE OF HAWAII              )
                                   ) SS.

COUNTY OF HAWAII      )

       I, CHARLENE ORCINO, being first duly sworn on oath, deposes and states that:

1. I am the Plaintiff in the above-entitled action.

2. I have read paragraphs 64-73 of the foregoing First Amended Verified Complaint.

3. The facts stated in the First Amended Verified Complaint are true and correct based upon my personal knowledge, expect as to the matters herein stated to be alleged on information and belief, and as to those matters, I believe them to be true.

4. Further Affiant sayeth naught.

       Executed in Hilo, Hawaii on   _JUNE 24, 2022_ .

                                        _Charlene Orcino_
                                       CHARLENE ORCINO

Sworn to before me this **24** day of

_June_ , 2022.

_Christine L. Periatt_
Notary Public, State of Hawaii

Name:   **Christine L. Periatt**
My Commission Expires: **2/5/2026**

CHRISTINE L. PERIATT
NOTARY PUBLIC
Comm. No. 06-62
STATE OF HAWAII

## NOTARY PUBLIC CERTIFICATION

Doc. Date: _6/24/2022_

#Pages: __3__

Notary Name: Christine L. Periatt

Judicial Circuit: __3ʳᵈ__

Doc. Description: _Verification of_
_Charlene Orcino_

Notary Signature

_6/24/2022_

Date

(Official Stamp or Seal)

3

TED H.S. HONG  #3569
Attorney at Law
P.O. Box 4217
Hilo, Hawaii 96720
Telephone:  (808) 933-1919
Facsimile:   (808) 935-8281
Email:  ted@tedhonglaw.com

Attorney for Plaintiffs
FREDERICK A. NITTA, M.D., INC.;
FREDERICK A. NITTA; HAWAII
COUNTY MEDICAL SOCIETY;
CHARLENE ORCINO; ADRIAN "SCOTT"
NORTON; ROBERT EGAN

### IN THE CIRCUIT COURT OF THE THIRD CIRCUIT

### STATE OF HAWAII

| | |
|---|---|
| FREDERICK A. NITTA, M.D., INC., and FREDERICK A. NITTA, individually and on behalf of all others similarly situated; HAWAII COUNTY MEDICAL SOCIETY; CHARLENE ORCINO; ADRIAN "SCOTT" NORTON; ROBERT EGAN,<br><br>Plaintiffs,<br><br>vs.<br><br>HAWAII MEDICAL SERVICE ASSOCIATION; DOE PERSONS 1-10; DOE PARTNERSHIPS 1-10; DOE CORPORATIONS 1-10; ROE "NON-PROFIT" CORPORATIONS 1-10, AND ROE GOVERNMENTAL ENTITIES 1-10,<br><br>Defendants. | CIVIL NO. 3CCV-22-0000033 (Contract)<br><br><br><br><br><br>VERIFICATION OF ADRIAN "SCOTT" NORTON<br><br><br><br><br><br>NO TRIAL DATE SET |

### VERIFICATION OF ADRIAN "SCOTT" NORTON

## VERIFICATION OF ADRIAN "SCOTT" NORTON

STATE OF HAWAII                              )
                                             ) SS.
COUNTY OF HAWAII                             )

      I, ADRIAN "SCOTT" NORTON, being first duly sworn on oath, deposes and states that:

1.  I am the Plaintiff in the above-entitled action.

2.  I have read paragraphs 74-85 of the foregoing First Amended Verified Complaint.

3.  The facts stated in the First Amended Verified Complaint are true and correct based upon my personal knowledge, expect as to the matters herein stated to be alleged on information and belief, and as to those matters, I believe them to be true.

4.  Further Affiant sayeth naught.

      Executed in Hilo, Hawaii on ___June 28, 2022___.

                                          _____
                                          ADRIAN "SCOTT" NORTON

Sworn to before me this _28th_ day of

___June_____, 2022.

_____
Notary Public, State of Hawaii

Name: ___LORI ANNE Y. RICHARDS___
My Commission Expires: _04·01·2026_

2

## NOTARY PUBLIC CERTIFICATION

Doc. Date: 06·28·2022

#Pages: 3

Notary Name: LORI ANNE Y. RICHARDS

Judicial Circuit: Third

Doc. Description: Verification of Adrian "Scott" Norton

(Notary seal: LORI ANNE Y. RICHARDS, NOTARY 18-156 PUBLIC, STATE OF HAWAII)

Notary Signature

Date: 06·28·2022

(Official Stamp or Seal)

**Electronically Filed**
**THIRD CIRCUIT**
**3CCV-22-0000033**
**28-JUN-2022**
**03:25 PM**
**Dkt. 20 EXH**

# EXHIBIT "1"

# *Frederick A. Nitta, M.D. Inc.*

The Medical Center • Ka Waena Lapa'au
670 Ponahawai, Suite 200 • Hilo, Hawaii 96720
Tel: (808) 961-5922 • Fax: (808) 969-1924

## PATIENT INFORMATION

| Legal Name | Last | First | M.I. | Maiden Name |
|---|---|---|---|---|

Birthdate _____  Sex _____  Marital Status  ☐ Married  ☐ Single  ☐ Other

**Allergies from Medication, Food and Other Sources:** _____

Social Security No. _____  Referred by _____  Primary Care Physician _____

**✱Street Address** _____  City _____  State ____  Zip ____

Home Phone _____  Cell Phone _____  Emergency Contact _____  Emergency Phone _____

**✱Mailing Address** _____  City _____  State ____  Zip ____

### MEDICAL INSURANCE INFORMATION

Ins. Cd.   Ins. Carrier   Subscriber No.   Effective Date   PCP

### EMPLOYMENT INFORMATION (FULL TIME / PART TIME)   ☐ NOT EMPLOYED

Current Employer _____  Phone No. _____

Employer's Address _____  City _____  State ____  Zip ____

Position _____  ☐ Full Time  ☐ Part Time  How Long Employed ____

Second Employer _____  Phone No. _____

Employer's Address _____  City _____  State ____  Zip ____

Position _____  ☐ Full Time  ☐ Part Time  How Long Employed ____

Immediate Past Employer _____  Phone No. _____

Employer's Address _____  City _____  State ____  Zip ____

Position _____  ☐ Full Time  ☐ Part Time  How Long Employed ____

## *MEDICARE AUTHORIZATION*

I request that payment of authorized Medicare benefits be made either to me or on my behalf to Dr. Frederick A. Nitta, M.D. for any services furnished me by that physician. I authorize any holder of medical information about me to release to the Health Care Financing Administration and its agents any information needed to determine these benefits or the benefits payable for related services. I understand my signature requests that payment be made and authorizes release of medical information necessary to pay the claim. If "other health insurance" is indicated in item 9 of the HCFA-1500 form, or elsewhere on other approved claim forms or electronically submitted claims, my signature authorizes releasing of the information to the insurer or agency shown. In Medicare assigned cases, the physician or supplier agrees to accept charge determination of the Medicare carrier as the full charge, and the patient is responsible only for the deductible, coinsurance, and noncovered services. Coinsurance and the deductible are based upon the charge determination of the Medicare carrier.

**X** _____
Beneficiary Signature          EXHIBIT "1"          Date

PATIENT INFO. (REV. 03/12)

**EMERGENCY INFORMATION**

## IN CASE OF EMERGENCY CONTACT ☐ None

Last       First       M.I.

Name _____ Relationship _____

Address _____ City _____ State ____ Zip _____

Home Phone _____ Business Phone _____ Cell Phone _____

Where Employed _____ Position _____

Last       First       M.I.

Name _____ Relationship _____

Address _____ City _____ State ____ Zip _____

Home Phone _____ Business Phone _____ Cell Phone _____

Where Employed _____ Position _____

## OTHER INFORMATION

Relative or Friend (not residing with you): ☐ Parent ☐ Brother ☐ Sister ☐ Friend ☐ Other _____

Last       First       M.I.

Name _____ Phone No. _____

Address _____ City _____ State ____ Zip _____

Where Employed _____ Business Phone _____

Position _____ Cell Phone _____

## ACKNOWLEDGEMENT OF RECEIPT OF NOTICE OF PRIVACY PRACTICES

I have received or read a copy of the Notice of Privacy Practices. The Notice describes how my health information may be used or disclosed. I understand that I should read it carefully. I am aware that the Notice may be changed at any time. I may obtain a revised copy of the Notice by calling 808-961-5922 or by requesting one at this Organization's offices.

\* Signature ✗ _____ _____ (Date) _____

(Print or Type Name)

Signature ✗ _____ _____ Date _____

**(By Parent or Legal Guardian if Minor)** (Print or Type Name)

\* As the representative of the above individual, I acknowledge receipt of the Notice on her behalf.

⊗ **Please list the names of the individuals you authorize us to disclose minor information:** (please print clearly)

☐ Parent
☐ Spouse
☐ Other

✗ _____

☐ Parent
☐ Spouse
☐ Other

✗ _____

☐ Parent
☐ Spouse
☐ Other

✗ _____

☐ Parent
☐ Spouse
☐ Other

✗ _____

I HEREBY AFFIRM that my answers to the foregoing questions are true and correct to the best of my knowledge. I authorize inquiry of the above information of any and all persons and agree to hold such person harmless with respect to any information they may give.

Signature ✗ _____ (Date) _____

Signature ✗ _____ Date _____

**(By Parent or Legal Guardian if Minor)**

I authorize release of any medical information necessary to process any medical claims. I also request payment of medical benefits to Frederick A. Nitta, M.D.

Signature ✗ _____ (Date) _____

Signature ✗ _____ Date _____

**(By Parent or Legal Guardian if Minor)**

PATIENT INFO.–BACK (REV. 03/12)

EXHIBIT "1"

Electronically Filed
THIRD CIRCUIT
3CCV-22-0000033
28-JUN-2022
03:25 PM
Dkt. 21 EXH

# EXHIBIT "2"

**Frederick A. Nitta, M.D., Inc.**

670 Ponahawai Street, Suite 200
Telephone (808) 961-5922
Fax (808) 969-1924

**Effective Immediately**

**Payment Policy**

Thank you for choosing us as your OBGYN/Primary Care for Men and Women. We are committed to providing you with quality and affordable health care. Because some of our patients have had questions regarding patient and insurance responsibility for services rendered, we have been advised to develop a payment policy. Please read it, ask us any questions you may have and sign in the space provided. A copy will be provided to you upon request.

1. **Insurance**- We participate in most insurance plans, including Medicare. If you are not insured by a plan we do business with, payment in full is expected at each visit. If you are insured by a plan we do business with but don't have an up-to-date insurance card, payment in full for each visit is required until we can verify your coverage. Knowing your insurance benefits is your responsibility. Please contact your insurance company with any questions you may have regarding your coverage.

2. **Co-payments and Deductibles**- All co-payments and deductibles must be paid at the time of service. This arrangement is part of your contract with your insurance company. Failure on our part to collect co-payments and deductibles from patients can be considered "FRAUD." Please help us in upholding the law by paying your co-payment at the time of each visit.

3. **Non-covered Services**- Please be aware that some and perhaps all of the services you receive may be a non-covered benefit, or considered not reasonable or necessary by Medicare or other insurers. You must pay for these services in full at the time of visit.

4. **Proof of Insurance**- All patients must complete our patient information form before seeing the doctor. We must obtain a copy of your driver's license and current valid insurance card to provide proof of insurance. If you fail to provide us with the correct insurance information in a timely manner, you may be responsible for the balance of a claim.

5. **Claims Submission**- We will submit your claims and assist you in any way we reasonably can to help get your claims paid. Your insurance company may need you to supply certain information directly. It is your responsibility to comply with their request. Please be aware that the balance of your claim is your responsibility whether or not your insurance company pays your claim. Your insurance benefit is a contract between you and your insurance company, we are not party to that contract.

EXHIBIT "2"

6. **Coverage Changes-** If your insurance changes, please notify us before your next visit so we can make the appropriate changes to help you receive your maximum benefits. If your insurance company denies your claim, the balance will automatically be billed to you.

7. **Nonpayment-** If your account is over 90 days past due, you will receive a letter stating that you have 20 days to pay your account in full. Partial payments will not be accepted unless otherwise negotiated. Please be aware that if a balance remains unpaid, we may refer your account to a collection agency.

I, _____ have read and understand that any visit that is not covered or unknown termination by my insurance, I will be held responsible for the cost and is non-refundable. I also understand that I will be sent a statement if the insurance does not cover it.

_____          _____
Signature of patient/ or responsible party          Date

EXHIBIT "2"

Electronically Filed
THIRD CIRCUIT
3CCV-22-0000033
28-JUN-2022
03:25 PM
Dkt. 22 EXH

# EXHIBIT "3"

1-1-2016


Frederick A. Nitta, M.D., Inc.
670 Ponahawai st #200
Hilo, Hawaii  96720



To: Board members of HMSA

Re: Continued attack on myself and other physicians in Hawaii


Dear Board Members of HMSA,

My name is Frederick Nitta, and I am a board certified obstetrician/gynecologist/PCP on the Big Island. In September of 2014, Jennifer Hu wrote me a letter to say that I had used the wrong code for drug screening since 2012.  She stated that code 80101 was wrong because it required a CLIA certification and that code 80104 should have been used.  She also suggested that I was committing fraud.  I was also referred to DHS for fraud.  They asked for millions of dollars back immediately.

My lawyer Eric Seitz and I met with Lori Kato,esq and Margie Sasaki from benefits integrity to discuss this.  We questioned that if the code had been wrong for so long, then why was HMSA covering this code for years and not saying anything about it.  Margie stated that the computer did not catch the mistake and that because HMSA deals with millions of claims a year it was not their fault.  It was instead my fault because HMSA expects the doctors to code things correctly.

DHS subsequently suspended all of my Quest and Medicaid payments since October of 2014.  I have still been seeing these patients as virtually no doctor here will see these high risk patients.  After an administrative judge reversed the suspension and the 3rd Circuit Court confirmed, I have still as yet not fully been reimbursed for my services.

 WellCare (Ohana)  also asked for money back for code 80101.  Instead of fighting this is court, Eric Seitz recommended that we simply pay them back with the understanding that we did not do anything wrong, but chose to settle the matter.  I agreed to this only if Ohana would pay for all of their underpayments, which I found out later that they already did so.  UHA on the other hand stated that they are not going to request any recoupment because it was their mistake.

We have been trying to settle this matter with HMSA for over a year now.  Since then, I have done thousands of hours of research about these codes.  In the end, CCS coders have explained to me that the code my office used is in fact correct.  Although the AMA CPT said to use code 80104, this is incorrect because of the descriptions of these codes.  Professional coders have access to explanations and scenarios that ultimately makes them conclude that code 80101 is the correct code.  My understanding

is that AHIMA also instructed the coders at HMSA about this, but they chose to ignore it, and subsequently have lost their certification as professional coders.

We have also heard that HMSA has been having meetings about trying to get rid of me. I have already gone through two credential reviews within a year. AHIMA coders have also informed me that what Margie Sasaki said about the computer not catching the mistake for years was not true. Someone at HMSA had been over-riding the computer, paying me for drug screening, but not paying me for office visits. CMS has also confirmed that code 80101 is the correct code because the crossover to government codes is to G0434 and G0431 which are the codes being used today.

HMSA has also provided DHS with inaccurate data in regards to being a PCP. HMSA has not been paying me for thousands of office visits. They then gave DHS information that essentially denies my being a PCP. The only reason that I did not hit 60% of my visits being primary care codes was that HMSA never paid me for my office visits. I do not understand how DHS can go along with this fraud.

Many other physicians in Hawaii have been attacked by HMSA. If this continues, then I do not understand how Hawaii will continue to care for their people. It is already very difficult if not impossible to find a PCP in Hilo. By HMSA's actions, I believe that it will get much worse very soon.
It may be financially advantageous for HMSA to pursue recoupment, but in the long run, they are destroying Hawaii.

We have asked HMSA to do a proper audit and to balance what they feel are overpayments with any underpayments. Lori Kato has repeatedly refused. HMSA is saying that we can only go back one year according to my contract. However, in recoupment audits, overpayments and underpayments need to be balanced. SBC 736 Act 033 also brings into question whether or not HMSA can go back 4 years for recoupment purposes. I have also asked Margie Sasaki for information regarding their investigation but have gotten no reply. My understanding is that federal ERISA laws apply, and that HMSA needs to release information on their investigation as requested.

I am also concerned about how HMSA, as the largest health insurance carrier in the state, can be paying for AlohaCare's claims. When AlohaCare asked for recoupment, they also included claims payed by HMSA, and that HMSA is asking for money back through AlohaCare.

I have been caring for the sickest and most underserved on the Big Island for decades. When almost every physician has refused these patients, I have been the one to care for them. I also have been trying my best to stop pregnant women from using drugs during their pregnancy. I do not enjoy doing this, but as their physician and as a human being, I have to continue to do so. I have been in contact with insurance companies, DEA, FBI, police, NED, DOH, prosecutors, pharmacists, overprescribing doctors, medical examiners, drug treatment centers, legislators, and anyone I could think of to try to stop the epidemic of drug addiction on the Big Island. I have continuously been trying to have other doctors in our community address this, but have been hearing the same response. "There are no treatment centers, so I do not want to know. Do what we do, kick out the drug addicts from your practice. We do not know how to talk to them like you do, so I rather not know. Don't take welfare patients, it's not worth the headache. Why do you even care about these addicts?"

If it is HMSA's mission to shut me down, then please do so. If you want this resolved, then hire a CCS coder to work with my coder to resolve overpayments with underpayments. If not, then give me time to

EXHIBIT "3"

complete our audit and we will release the findings and recommendations, and hopefully be able to resolve this issue.


Sincerely,


Frederick A. Nitta, M.D., Inc.


EXHIBIT "3"

TED H.S. HONG  #3569
Attorney at Law
P.O. Box 4217
Hilo, Hawaii 96720
Telephone:  (808) 933-1919
Facsimile:  (808) 935-8281
Email:  ted@tedhonglaw.com

Electronically Filed
THIRD CIRCUIT
3CCV-22-0000033
28-JUN-2022
03:25 PM
Dkt. 23 DJT

Attorney for Plaintiffs
FREDERICK A. NITTA, M.D., INC.;
FREDERICK A. NITTA; HAWAII
COUNTY MEDICAL SOCIETY;
CHARLENE ORCINO; ADRIAN "SCOTT"
NORTON; ROBERT EGAN

IN THE CIRCUIT COURT OF THE THIRD CIRCUIT

STATE OF HAWAII

| | |
|---|---|
| FREDERICK A. NITTA, M.D., INC., and FREDERICK A. NITTA, individually and on behalf of all others similarly situated; HAWAII COUNTY MEDICAL SOCIETY; CHARLENE ORCINO; ADRIAN "SCOTT" NORTON; ROBERT EGAN, <br>       Plaintiffs, | CIVIL NO. 3CCV-22-0000033 (Contract) |
|    vs. | DEMAND FOR TRIAL BY JURY |
| HAWAII MEDICAL SERVICE ASSOCIATION; DOE PERSONS 1-10; DOE PARTNERSHIPS 1-10; DOE CORPORATIONS 1-10; ROE "NON-PROFIT" CORPORATIONS 1-10, AND ROE GOVERNMENTAL ENTITIES 1-10, <br>       Defendants. | NO TRIAL DATE SET |

**DEMAND FOR TRIAL BY JURY**

  Comes Now, Plaintiff, FREDERICK A. NITTA, M.D., INC. (hereinafter referred to as

"FNI"), and Plaintiff FREDERICK A. NITTA, as an individual ("FN") and (on behalf of all

others similarly situated,) HAWAII COUNTY MEDICAL SOCIETY ("HCMS"); CHARLENE

ORCINO ("Orcino"); ADRIAN "SCOTT" NORTON ("Norton"); ROBERT EGAN ("Egan"),

by and through their undersigned counsel and hereby demands a jury to try any and all claims

triable by a jury.

DATED:       Hilo, Hawaii, June 28, 2022.

Respectfully submitted,

 */s/*Ted H. S. Hong
TED H. S. HONG
Attorney at Law

Attorney for Plaintiffs
FREDERICK A. NITTA, M.D., INC.;
FREDERICK A. NITTA; HAWAII
COUNTY MEDICAL SOCIETY;
CHARLENE ORCINO; ADRIAN "SCOTT"
NORTON; ROBERT EGAN

2

| **STATE OF HAWAI'I**<br>CIRCUIT COURT OF THE<br>THIRD CIRCUIT | **SUMMONS**<br>TO ANSWER CIVIL COMPLAINT | CASE NUMBER<br>3CCV-22-0000033 |
| --- | --- | --- |

| PLAINTIFF                                    VS. | DEFENDANT(S) |
| --- | --- |
| FREDERICK A. NITTA, M.D., INC.;<br>FREDERICK A. NITTA;<br>HAWAII COUNTY MEDICAL SOCIETY;<br>CHARLENE ORCINO;<br>ADRIAN "SCOTT" NORTON;<br>ROBERT EGAN. | HAWAII MEDICAL SERVICE ASSOCIATION, ET AL.<br><br><span style="color:red">**Electronically Filed<br>THIRD CIRCUIT<br>3CCV-22-0000033<br>28-JUN-2022<br>03:25 PM<br>Dkt. 24 SUMM**</span> |

PLAINTIFF'S NAME & ADDRESS, TEL. NO.

FREDERICK A. NITTA, M.D., INC.; FREDERICK A. NITTA; HAWAII COUNTY MEDICAL SOCIETY;
CHARLENE ORCINO; ADRIAN "SCOTT" NORTON; ROBERT EGAN
C/O TED H. S. HONG, 3569
P. O. BOX 4217
HILO, HI 96720
TELEPHONE NO. 808.933.1919

**TO THE ABOVE-NAMED DEFENDANT(S)**

You are hereby summoned and required to file with the court and serve upon

TED H. S. HONG, 3569
P. O. BOX 4217
HILO, HI 96720  TELEPHONE NO. 808.933.1919 ,

plaintiff's attorney, whose address is stated above, an answer to the complaint which is herewith served upon you, within 20 days after service of this summons upon you, exclusive of the date of service.  If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

**THIS SUMMONS SHALL NOT BE PERSONALLY DELIVERED BETWEEN 10:00 P.M. AND 6:00 A.M. ON PREMISES NOT OPEN TO THE GENERAL PUBLIC, UNLESS A JUDGE OF THE ABOVE-ENTITLED COURT PERMITS, IN WRITING ON THIS SUMMONS, PERSONAL DELIVERY DURING THOSE HOURS.**

**A FAILURE TO OBEY THIS SUMMONS MAY RESULT IN AN ENTRY OF DEFAULT AND DEFAULT JUDGMENT AGAINST THE DISOBEYING PERSON OR PARTY.**

| The original document is filed in the Judiciary's electronic case management system which is accessible via eCourt Kokua at: http:/www.courts.state.hi.us | **Effective Date of 28-Oct-2019**<br>Signed by: /s/ Cheryl Salmo<br>**Clerk, 3rd Circuit, State of Hawai'i** |  |
| --- | --- | --- |

 In accordance with the Americans with Disabilities Act, and other applicable state and federal laws, if you require a reasonable accommodation for a disability, please contact the ADA Coordinator at the Circuit Court Administration Office on HAWAII- Phone No. 808-961-7424, TTY 808-961-7422, FAX 808-961-7411, at least ten (10) working days prior to your hearing or appointment date.

Form 1C-P-787 (3CCT) (10/19)
Summons to Complaint    RG-AC-508 (10/19)